# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### APRIL SESSION, 1998

FILED

May 8, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 02C01-9705-CC-00186 |
| | ) | |
| Appellee | ) | |
| | ) | HARDEMAN COUNTY |
| vs. | ) | |
| | ) | Hon. JON KERRY BLACKWOOD, Judge |
| DEAN BENJAMIN CLARK, II, | ) | |
| | ) | (Reckless Homicide, Assault, |
| Appellant | ) | Unlawful Carrying of a Weapon) |

For the Appellant:

**D. Tyler Kelly**
Hardee, Martin & Jaynes
P. O. Box 98
Jackson, TN 38302

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Elizabeth T. Ryan**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**Elizabeth T. Rice**
District Attorney General

**Jerry Norwood and
Christopher Marshburn**
Asst. District Attorneys General
302 Market Street
Somerville, TN 38068

OPINION FILED: _____

AFFIRMED AS MODIFIED

**David G. Hayes**
Judge

The appellant, Dean Benjamin Clark II, was indicted by a Hardeman County Grand Jury for the offenses of second degree murder, reckless homicide, aggravated assault, and unlawful carrying of a weapon with the intent to go armed. Following a jury trial, the appellant was found guilty of reckless homicide, a class D felony, and the misdemeanor offenses of assault, and unlawful carrying of a weapon. Subsequently, the trial court imposed concurrent sentences of two years for the conviction for reckless homicide, six months for the conviction for assault, and ten days for the conviction for unlawful carrying of a weapon. In granting a sentence of split confinement, the court ordered that the appellant serve seventy-five days of his effective sentence in the county jail, with the remainder of the sentence to be served in the Community Corrections Program. In this appeal as of right, the appellant contends:

I. The evidence is insufficient to support a conviction for reckless homicide; and

II. The trial court should have granted a sentence of total probation.

After a review of the evidence, we affirm the appellant's conviction for reckless homicide. However, the State concedes, and we agree, that the appellant is ineligible for a community corrections sentence. Accordingly, the sentence is modified to reflect a sentence of supervised probation in lieu of placement in the local community corrections program.

**Background**

Around 7:30 or 8:00 p.m. on March 16, 1996, Benjamin "Benji" Mills, his girlfriend, Kelly Hughes, and her sister-in-law, Lori Hughes, met for an evening of socializing and visiting with friends. Mills and his girlfriend were both seventeen

2

years of age and high school students; Lori Hughes was twenty years old. All three lived in or around Walnut, Mississippi. After visiting friends in Mississippi, the trio left in Mills' white Blazer to visit friends in adjoining Hardeman County, Tennessee. En route home, they stopped at Collins One Stop in Middleton, Tennessee. Lori went into the convenience store to purchase some potato chips. The group then started back towards Walnut.

After traveling a short distance, they realized that the remote control changer for the CD player was missing and Mills pulled to the side of the road to look for the remote. Unable to locate the remote, they then decided to return to the convenience store to see if it had fallen out of the Blazer. At the store, Mills looked around the parking lot for the remote, while Lori went inside to see if it had been found.

Meanwhile, the appellant, accompanied by Franklin Anderson, arrived at the convenience store in the appellant's green pickup truck. The appellant and Anderson saw a few of their friends and made plans to follow them to a party on "Dry Springs Road," near the Girl Scout Camp. As the appellant and Anderson walked toward the truck, Lori Hughes exited the store and approached them. The appellant testified that Lori was staggering and appeared to be intoxicated. She asked them if they had seen a remote. Anderson and the appellant responded no and continued toward the appellant's truck. Lori then began "cussing and swearing." The appellant told Lori to "sober up" and to "grow up." The appellant and Anderson returned to the truck and left the convenience store following their friends to the party.

Lori returned to the Blazer and appeared to be upset. She instructed Mills to follow the green truck driven by the appellant. Mills complied with Lori's request and began pursuit of the green truck at a high rate of speed. Middleton Police Officer

3

Mike Kennemore observed the white Blazer and attempted to catch up to the vehicle. Officer Kennemore testified that the white Blazer "passed a couple of cars in no passing zones" and crossed the railroad tracks even though the warning gates were lowered for an oncoming train. The train aborted Officer Kennemore's pursuit, however, he notified the Hardeman County Sheriff's Department of the situation.

The appellant heard Officer Kennemore's report on his police scanner and looked in his rear view mirror in time to see the Blazer crossing the railroad tracks. Both Anderson and the appellant observed the fast approach of the white Blazer, which began flashing its highbeams. Mills pulled alongside the appellant's vehicle and applied his brakes. The appellant then passed the Blazer. Mills again pulled alongside the appellant's vehicle. The appellant and Anderson testified that, at this time, Lori was pointing a gun out of the passenger side window at them.[1] The Blazer passed the appellant's truck and pulled in between the appellant's truck and the vehicle driven by the appellant's friends. The Blazer followed the lead vehicle onto Girl Scout Road, however, the appellant did not turn and headed toward Bolivar. The appellant pulled off the road and called the Sheriff's Department on his cellular phone to report the Blazer and the female pointing the gun at them.[2] Meanwhile, the Blazer pulled alongside the driver's side of the appellant's truck. After both vehicles came to a stop, the testimony of the witnesses are at a material variance as to the sequence and circumstances of the events that followed.

Nonetheless, it is undisputed that Mills and Anderson became involved in an argument resulting in Mills hitting Anderson in the mouth with a Bud Light beer

---

[1]Two of the State's witnesses, Benji Mills and Kelly Hughes, denied that Lori ever pointed a weapon at the appellant's truck. State's witness Franklin Anderson, however, confirmed the appellant's version of the events. Police officers discovered a .38 revolver in the glove compartment of the Blazer.

[2]Chief Deputy Mike Lawson confirmed the appellant's report to the Sheriff's Department.

bottle.[3]  The appellant, meanwhile, armed with his .44 Magnum revolver, got out of his vehicle.  Lori, who was standing near Mills, began to slap the appellant in an attempt to knock the weapon out of the appellant's hands.  The appellant pushed Lori out of the way and, in an effort to aid Anderson, hit Mills over the head with the butt of the gun.  Anderson then heard a gunshot, looked toward the rear of the vehicle, and saw the appellant pointing his gun in the air.[4]  The gun discharged again, at which point, the appellant testified that he realized that the weapon was not functioning properly.  He "released Lori Hughes from having her pinned up against the truck . . ., pointed the gun straight down at the ground . . ., and . . . pulled the hammer back again . . ." and, in the same motion, released the hammer.  The hammer struck the firing pin, firing a bullet into the pavement about three inches in front of the appellant's left foot, scattering pieces of pavement into the appellant's face.  Unknown to the appellant, the ricocheting bullet struck Lori Hughes in the head.  The appellant got into his truck and told Anderson that the weapon was firing without him touching the trigger.  The appellant then left the scene of the incident.

Meanwhile, Mills climbed back into the Blazer with Kelly.  The two were unable to see Lori and Mills began to look for her.  She was found lying on the ground, partially underneath the Blazer.  A significant amount of blood was coming from her head.  Mills and Kelly then placed Lori in the Blazer.  En route to the hospital, Mills was stopped by police officers.  Lori was then transferred to an ambulance.  She died sometime later from a gunshot wound to the head.  Dr. Wendy Gunther, a forensic pathologist, conducted an autopsy and determined that the victim was shot at a distance of over three feet.  Dr. Gunther confirmed that the victim's blood alcohol level, at the time of her death, was .09 percent.

---

[3]The blow of the beer bottle knocked out three of Anderson's teeth, broke four teeth and chipped an additional three teeth.

[4]The appellant explained that he fired the weapon in an attempt to scare Mills and Hughes and put an end to the confrontation.

A subsequent examination of the appellant's weapon revealed that the trigger guard on the gun was bent. The bent trigger guard, which was pressing on the trigger, caused the trigger to be engaged so that if the hammer was cocked and then released, the weapon would fire instantly.

Based upon this evidence, the jury found the appellant guilty of reckless homicide, assault, and carrying a weapon with the intent to go armed.

## I. Sufficiency of the Evidence

The appellant contends that the proof is insufficient to establish the *mens rea* of the offense of reckless homicide, i.e., that he acted recklessly. Specifically, the appellant argues that "the risk that the bullet would strike and kill Lori [Hughes] was not substantial and unjustifiable." Additionally, he maintains that "failing to perceive the risk that the bullet might strike and kill Lori [Hughes] does not constitute a gross deviation from the standard of care that an ordinary person would exercise under all of the circumstances as viewed from the accused person's standpoint." (emphasis in original). For the reasons discussed herein, we disagree.

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Also, it is the responsibility of the jury to resolve any conflicts in the evidence and to weigh the credibility of the witnesses. Id. at 836. On appeal the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be

drawn therefrom.  <u>State v. Harris</u>, 839 S.W.2d 54, 75 (Tenn. 1992).  It is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); <u>State v. Cazes</u>, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e).

Reckless homicide is defined as a "reckless killing of another."  Tenn. Code Ann. § 39-13-215 (1996 Supp.).

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.  The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-106 (a)(31) (1996 Supp.).

The <u>risk</u> of which the accused is aware must be <u>substantial</u> in order for the recklessness judgment to be made.  The risk must also be <u>unjustifiable</u>.  The awareness of the risk is measured from the actor's point of view.  The question remains as to what standard is used in determining how substantial and how unjustifiable the risk must be in order to warrant a finding of culpability.  These are questions to which the jury must evaluate the actor's conduct and determine whether it should be condemned.  Thus, the jury must answer two questions: (1) to what extent was the actor aware of the risk, of factors relating to its substantiality, and of factors relating to its unjustifiableness; and (2) whether the actor's conscious disregard of the risk justifies condemnation. <u>See</u>  Comment, MODEL PENAL CODE § 2.02 (1985).

7

The proof at trial revealed that the appellant fired his weapon into the air in an attempt to scare Mills and Lori. He admitted that after the second shot he realized that the gun was not functioning properly because it was firing without pulling the trigger. With full knowledge that Lori Hughes and Mills were within close proximity, the appellant aimed the weapon at the ground and, again, fired the weapon. The bullet ricocheted off the pavement striking Lori Hughes in the head. The evidence also revealed that the appellant had twelve years service in the United States Marine Corps and was experienced and knowledgeable regarding the operation of various types of weapons. These factors are sufficient for a rational trier of fact to conclude that the appellant was aware that the firing of a malfunctioning weapon in close proximity of other individuals during a volatile confrontation was likely to cause injury to those individuals. Since the discharge of a firearm is likely to result in injury, the risk created is substantial. Moreover, we find the appellant's subsequent action unjustifiable in light of the surrounding circumstances. Thus, the appellant's actions constituted a gross deviation from the standard of care required of a reasonable person with the appellant's experience with firearms and in the same circumstances. A rational juror could reasonably conclude that the appellant's actions were not accidental; but constituted reckless conduct. Viewing the evidence in the light most favorable to the State, we cannot conclude otherwise. This issue is without merit.

## II. Sentencing

In his final issue, the appellant contends that the trial court erred by denying total probation. Although the State concedes that the trial court erroneously imposed a Community Corrections sentence, the State argues that the appellant is not entitled to full probation.

At the sentencing hearing, the State presented the testimony of Pam Hightower, the victim's mother. Ms. Hightower expressed the emotional pain caused by the death of her daughter. No further witnesses were presented. The pre-sentence report revealed that the appellant is a single thirty-year old high school graduate with a six year old son. In June 1996, the appellant received an honorable discharge after twelve years service in the United States Marine Corps. Since his discharge, the appellant has been employed as both a laborer and an electrician. Other than several traffic violations, the appellant has no prior criminal record. Both sides rested and the sentencing determination was submitted to the trial court based upon the evidence contained in the pre-sentence report and Ms. Hightower's testimony.

The trial court imposed concurrent sentences of two years for the conviction for reckless homicide, six months for the conviction for assault, and ten days for the conviction for unlawful carrying of a weapon. The court further ordered the appellant to serve seventy-five days of his effective sentence in the county jail, with the remainder of the sentence to be served in the Community Corrections Program.

When a defendant challenges the manner of service of his sentence, this court must conduct a *de novo* review with the presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d)(1990). This presumption only applies, however, if the record shows that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this case, the record is entirely void of any findings of fact which reflect any consideration of the relevant sentencing principles, thus, the presumption fails. In this regard, we emphasize that the trial court is obliged to make its findings on the record in order to assist an appellate court in conducting its *de novo* review. Tenn. Code Ann. § 40-35-209; Tenn. Code Ann. § 40-35-210(f). The fact that this court's review of the sentence is *de novo* does not relieve the trial court of its duty.

Nonetheless, the appellant maintains the burden of showing that the sentence imposed by the trial court is improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

The trial court imposed a sentence pursuant to the Community Corrections Act. A defendant convicted of a crime against the person, as provided in title 39, chapter 13, parts 1-5, is not eligible for a community corrections sentence. See Tenn. Code Ann. § 40-36-106(a)(2) (1996 Supp.). Reckless homicide is codified at Tenn. Code Ann. § 39-13-215 and is, therefore, a crime against the person. Additionally, the appellant is ineligible because use of a weapon was involved in the commission of the felony offense. See Tenn. Code Ann. § 40-36-106(a)(4) (1996 Supp.). Notwithstanding his ineligibility based upon these two reasons, he would, nevertheless, remain eligible for placement in the community corrections program, if the proof in the record established a causal connection between the crimes committed and a history of chronic alcohol abuse, drug abuse or mental health problems. See Tenn. Code Ann. § 40-36-106(c). The record reflects no such proof. Accordingly, the appellant is not eligible for a sentence pursuant to the Community Corrections Act; therefore, the trial court's sentencing determination is improper.

Nonetheless, we do find the appellant to be a suitable candidate for alternative sentencing. The appellant is a first-time offender of a class D felony. See Tenn. Code Ann. § 40-35-102(5), -102(6) (1996 Supp.). Additionally, he is statutorily eligible for probation. See Tenn. Code Ann. § 40-35-303(a) (1996 Supp.). The appellant's eligibility for probation is not conclusive; the appellant bears the burden of establishing his suitability for probation. See Tenn. Code Ann. § 40-35-303(b). To meet this burden, the appellant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995) (citation omitted).

While not controlling on the issue of probation, but relevant to the sentencing court's determination are the following:

(1) the nature and circumstances of the conduct involved, Tenn. Code Ann. § 40-35-210(b)(4);

(2) the defendant's potential or lack of potential for rehabilitation, Tenn. Code Ann. § 40-35-103(5);

(3) whether a sentence of probation will unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and

(4) whether a sentence other than probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B).

See Bingham, 910 S.W.2d at 456.

As previously indicated, the appellant maintains the burden of establishing that the sentence imposed by the trial court is improper. In this regard, we find that the appellant has failed in carrying this burden. Although the facts and circumstances of the offense alone are insufficient to deny an alternative sentence, they may be sufficient to deny a grant of total probation. See Bingham, 910 S.W.2d at 456. After *de novo* review of the above principles and circumstances of the case, we find that the 75 day period of confinement ordered by the trial court is both justified and appropriate.

Accordingly, the appellant's sentences are affirmed, subject to the following sentencing modification: following the appellant's confinement in the county jail for a period of 75 days, he is to be released upon supervised probation for the balance of his two year sentence. The appellant's judgment of conviction for the offense of reckless homicide is affirmed.

_____
DAVID G. HAYES, Judge


CONCUR:



_____
WILLIAM M. BARKER, Judge


_____
JOE G. RILEY, Judge